IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-01645-LTB-KLM

KEITH RABIN,

      Plaintiff,

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY,

      Defendant.

_____

## ORDER

_____

This matter is before me on two motions by Plaintiff Keith Rabin.  The first is his Motion to Assert Punitive Damages Pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a) **[Doc #64]**, against Defendant Fidelity National Property and Casualty Insurance Company. The second is his Motion for Partial Summary Judgement Re Failure to Satisfy Appraisal Award **[Doc #65]**. After considering the parties' arguments, and for the reasons herein, I DENY Plaintiff's first motion with prejudice, and I DENY his second motion.

## I. Background

Only an abbreviated recitation of the facts is necessary. Plaintiff had a homeowner's insurance policy issued by Defendant. On February 19, 2009, a fire occurred at Plaintiff's home, damaging his real and personal property.  Plaintiff submitted a claim for his loss to Defendant, and Defendant began its claim review and adjustment process.

Shortly after the fire, Defendant began making payments to Plaintiff for, *inter alia*, some of his personal property losses. Between February 25, 2009, and January 19, 2010, Defendant made

various payments to Plaintiff totaling $34,403.89 for his personal property claim.

For numerous reasons, but primarily because Plaintiff expressed dissatisfaction with Defendant's handling of his claim and the valuation process, Defendant requested an appraisal of the loss for Plaintiff's entire claim. Plaintiff's insurance policy permitted this action. Pursuant to Defendant's request, James Espinoza of Disaster Restoration, Inc., and Jeffrey Mercer of Vericlaim, Inc., appraised Plaintiff's personal property loss. On July 13, 2010, the two appraisers concluded that the actual cash value for Plaintiff's personal property loss was $52,376.74. (Under the terms of the insurance policy, the "actual cash value" was the pertinent value.) Accordingly, the appraisers issued an appraisal award reflecting their conclusion and this amount (the "Award").

Per the terms of Plaintiff's insurance policy, the Award represented the entire amount of his personal property loss. As a result, before paying Plaintiff the Award, Defendant deducted the $34,403.89 it had previously paid Plaintiff for his personal property claim (the "Deduction"). The Deduction encompassed four items that are the subject of Plaintiff's motion for summary judgment. Without waiving its right or ability to challenge the Award, Defendant then satisfied the Award by paying Plaintiff the remainder via two payments made on July 21 and 22, 2010, respectively.

Plaintiff ultimately became disenchanted with how Defendant handled his claim. On June 11, 2010, he filed suit in state court. Among other things, he alleges that Defendant grossly mistreated him, failed to properly communicate with him, and improperly denied aspects of his claim. The suit levies three causes of action: (1) breach of contract; (2) bad faith breach of an insurance contract; and (3) a violation of Colo. Rev. Stat. § 10-3-1116. Defendant removed the case to this Court on diversity grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

## II. Motion to Assert Punitive Damages

In this motion, Plaintiff requests leave to amend his complaint to assert a claim for punitive damages pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a).  That statute provides the following:

> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

Colo. Rev. Stat. § 13-21-102(1.5)(a).

Defendant argues that the motion should be denied as untimely. It refers the Court to this case's Scheduling Order.  *See* Doc # 12 (the "Scheduling Order").  The Scheduling Order set February 7, 2011, as the deadline for amending the pleadings; Plaintiff filed this motion nearly nine months after that deadline.  As a result, Defendant argues that Plaintiff must satisfy both Fed. R. Civ. P. 15(a)(2) and 16(b)(4) and that Plaintiff fails to do so.

### A. Law

I begin by surveying the landscape of Rules 15(a) and 16(b)(4). Rule 15(a) governs the amendment of pleadings before trial.  *See* Fed. R. Civ. P. 15(a). Under the rule, "[e]xcept when an amendment is pleaded 'as a matter of course, . . a party may amend its pleading only with the opposing party's written consent or the court's leave.' " *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).  Courts "should freely grant leave when justice so requires." *Id*.  The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Minter v. Prime Equip*., 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted).  Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure

to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to grant leave to amend the pleadings pursuant to Rule 15(a) is within the court's wide discretion. *See Minter*, 451 F.3d at 1204; *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999). Consequently, the trial court's decision will not be reversed "absent an abuse of discretion," which is when the decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin*, 536 F.3d at 1229.

Rule 16 governs amendments to pretrial scheduling orders. *See* Fed. R. Civ. P. 16(b). The rule "gives district courts wide latitude in entering scheduling orders." *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978 (10th Cir.) A scheduling order sets a deadline for amending the pleadings. After a scheduling order is entered, it may be amended only upon a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Scheduling Order here so stated. *See* Scheduling Order § 13. "Demonstrating good cause under the rule 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for delay.' " *Strope v. Collins*, 315 Fed. App'x 57, 61, 2009 WL 465073, *3 (10th Cir. Feb. 25, 2009). A district court's refusal to modify a scheduling order will be reviewed for an abuse of discretion. *Burks*, 81 F.3d at 978.

Because "[r]ule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action," *Minter*, 451 F.3d at 1205, the rules overlap when a party seeks to amend a pleading after the scheduling order's deadline. To be sure, a party seeking to amend an existing pleading after the scheduling order's deadline must meet Rule 15(a)(2). *See, e.g.*, *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009); *see also Martinez v. Target*

4

*Corp.*, 384 Fed. App'x 840, 847 n.5, 2010 WL 2616651, *4 (10th Cir. July 1, 2010).

By contrast, it is unclear whether a plaintiff seeking to amend an existing pleading after a scheduling order's deadline must also meet Rule 16(b)(4)'s "good cause" requirement. "Most circuits have held that when a party amends a pleading after a deadline set by a scheduling order, Rule 16 and its 'good cause' requirement are implicated." *Bylin*, 568 F.3d at 1231 n.9 (citing cases from other jurisdictions for that proposition). The Tenth Circuit, however, "has not ruled on that question in the context of an existing pleading." *Id.*; *accord Lockheed Martin Corp.*, 558 F.3d at 1166 (explaining that the Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders") (citing *Minter*, 451 F.3d at 1205 n.4). (I note parenthetically that there is precedent from this Court that the moving party must meet *both* rules in this situation. *See, e.g.*, *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001), *Nicastle v. Adams Cnty. Sheriff's Office*, 2011 WL 1465586 (D. Colo. Mar. 14, 2011).)

This matters because Rule 16(b)(4) imposes "an arguably more stringent standard than the standards for amending a pleading under Rule 15." *Bylin*, 568 F.3d at 1231; *accord Martinez*, 384 Fed. App'x at 847 n.5 (stating that Rule 15(a)(2) is "more lenient" than Rule 16(b)(4)). Thus, if a plaintiff must meet both rules, it is entirely conceivable that he could satisfy Rule 15(a)(2) but fail Rule 16(b)(4) and would therefore be precluded from amending his complaint. Conversely, if he must meet only Rule 15(a)(2), whether he can show "good cause" under Rule 16(b)(4) is irrelevant.

### B. Discussion

With that survey, I turn to Plaintiff's motion. I note that cases from this Court begin with

Rule 16(b)(4). *See, e.g.*, *Nicastle,* 2011 WL 1465586, at *1 ("Because Plaintiff filed his motion after the deadline for amending the pleadings, the court employs a two-step analysis, first determining whether Plaintiff has shown good cause to modify the scheduling order under [Rule 16(b)], then evaluating whether Plaintiff has satisfied the standard for amendment under [Rule 15(a)]."); *and Pumpco*, *supra.*  But when the Tenth Circuit has held that Rule 15(a)(2) is unsatisfied, it does not address Rule 16(b)(4). *See, e.g.*, *Lockheed Martin Corp.*, 558 F.3d at 1166 ("Because the motion cannot meet the Rule 15(a)(2) standard, however, this court does not address whether compliance with Rule 16(b)(4) is also required."); *see also Martinez*, 384 Fed. App'x 840, 847 n.5 ("We need not address Target's argument that Rule 16(b)(4)'s 'good cause' standard applies in this case because [the plaintiff] cannot satisfy the more lenient standard of Rule 15(a)(2)."). I hew to this approach and begin with Rule 15(a)(2).

The first issue is whether the Plaintiff's motion is subject to Rule 15(a). I conclude that it is. Rule 15(a) applies to "amendments."  *See* Fed. R. Civ. P. 15(a). Plaintiff's first amended complaint does not seek punitive damages.  *See* 1st Am. Compl. at 3. This motion seeks leave to assert them. This is an "amendment" under the Federal Rules of Civil Procedure.  *See, e.g.*, *Doelle v. Mountain States Tel. & Tel.*, 872 F.2d 942, 947-48 (10th Cir. 1989) ("The plaintiff's original complaint did not seek punitive damages, exemplary damages, or damages for mental distress. Because the plaintiff did not seek such damages in his original complaint, the district court could not award them without permitting the plaintiff *to amend*") (emphasis added); *see also Wessel v. City of Albuquerque*, 299 F.3d 1186, 1196-97 (10th Cir. 2002).  Section 102(1.5)(a) bolsters my conclusion.  It prescribes that "[a] claim for exemplary damages in an action governed by this section may be allowed *by amendment of the pleadings* . . . ." Colo. Rev. Stat. § 13-21-102(1.5)(a)

(emphasis added).  Even Plaintiff's first amended complaint states that he needs to assert punitive damages "by way of property *amendment*." *See* 1st Am. Compl. at 3 (emphasis added). His request to amend comes after the Scheduling Order deadline.  *See* Scheduling Order § 9(a) ("Deadline for Joinder of Parties and Amendment of Pleadings: February 7, 2011).  Thus, Rule 15(a)(2) patently applies.  *See, e.g.*, *Lockheed Martin Corp.*, 558 F.3d at 1166.

In his reply, Plaintiff contends that neither Rule 15(a) nor Rule 16(b)(4) applies.  This explains why his motion does not quote, reference, or otherwise rely on either rule.  Plaintiff heavily relies upon *Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194 (D. Colo. 1994), and *Ambraziunas v. Bank of Boulder*, 846 F. Supp. 1459, 1466 (D. Colo. 1994), for the proposition that "asserting a claim for punitive damages pursuant to [section 102(1.5)(a)] does not involve an amendment of the pleadings pursuant to [Rule 15]."  Those cases do not stand for that proposition.

In *Fernandez, supra*, the plaintiff moved for leave to amend his complaint to assert a claim for punitive damages prior to the scheduling order's amendment deadline.  The court held that a request for punitive damages does not constitute a separate and distinct cause of action.  *Id.* at 1196. It instead concluded that it is a request for relief.  *Id.*  Therefore, the court stated, "[i]t would be futile to allow the plaintiffs to amend to assert *a claim* for punitive damages, because any such claim would be subject to dismissal as a matter of law."  *Id.* (emphasis added).  The court did, however, grant the plaintiff's motion in so far as it sought to request punitive damages under an *existing* claim. But, in rendering its decision, the court explicitly stated that "the plaintiff's Motion to Amend is governed . . . by Fed. R. Civ. P. 15(a)."  *Id.* at 1195; *accord* at 1196 ("The defendant's acknowledge . . . that [p]laintiffs may be permitted to add a request for punitive damages to their prayer for relief *under the liberal standard of Rule 15(a).*") (emphasis added).  Thus, *Fernandez* does not stand for

the proposition that a motion for leave to assert punitive damages is excepted from Rule 15(a).  To the contrary, it posited that Rule 15(a) applies.  Plaintiff's reliance on this case is also misplaced because the plaintiff in *Fernandez* moved to amend to assert punitive damages *before* the scheduling order's deadline.

Plaintiff also distorts *Ambraziunas*, *supra*.  In that case, a plaintiff similarly attempted to assert a claim for punitive damages. 846 F. Supp. at 1466.  The court held that in Colorado, "[a] request for exemplary damages does not constitute a separate and distinct cause of action but is a request for relief, auxiliary to an underlying claim for actual damages."  *Id.* It thus dismissed the claim but granted the plaintiff "permission to replead this element of damages in connection with those claims in which they are appropriately recoverable, but not as a separate claim for relief." The court did not hold that a motion for leave to assert punitive damages is excepted from Rule 15(a). It instead treated that particular amendment as all others, to which Rule 15(a) applies.  *See id.*

Plaintiff also conclusorily asserts that the motion does not implicate the Scheduling Order deadline.  *See* Pl.'s Reply In Support of Mot. to Assert Punitive Damages ¶ 6. This is problematic. As Plaintiff would have it, then, nothing establishes a time by which he must assert punitive damages.  In that system, a plaintiff could move to assert punitive damages on the eve of trial.  This cannot be so.

For these reasons, I conclude that Rule 15(a)(2) applies to Plaintiff's motion.  Hence, the next issue is whether Plaintiff actually satisfies the rule. Defendant argues that Plaintiff does not because the motion is untimely. I agree with Defendant.

In *Foman*, the Supreme Court listed "undue delay" as a justification for denying a motion to amend. 371 U.S. at 182. It is true that "[l]ateness does not of itself justify the denial of the

amendment." *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). "However, '[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.' " *Id.* (quoting *R.E.B., Inc.,* 525 F.2d at 751). And the longer the delay, "the more likely the motion to amend will be denied, . . ." *Id.* (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). Although there is no deadline for moving to amend under Rule 15(a)(2), the Tenth Circuit has affirmed a district court denying a plaintiff's motion to amend his complaint on grounds that it was filed three months after a scheduling order's deadline. *See Doelle*, 872 F.2d at 947.

With respect to establishing "undue delay," the Tenth Circuit "focuses primarily on the reasons for the delay." *Minter*, 451 F.3d at 1206. It has held that denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Frank*, 3 F.3d at 1365-66; *accord Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision."). Importantly, I need not find prejudice to deny the motion. *See Minter*, 451 F.3d at 1205-06, nn. 5 & 6.

The deadline for amending the pleadings was February 7, 2011. *See* Scheduling Order § 9(a). Plaintiff filed this motion on October 31, 2011–nearly nine months after the amendment deadline. The motion is devoid of explanation for this delay. Nor does Plaintiff proffer an explanation is his reply; he instead argues that Rules 15(a) and 16(b)(4) simply do not apply. Under Tenth Circuit jurisprudence, this lack of explanation alone justifies denying the motion. *See Frank, supra*; *and Durham*, *supra*.

The unexplained delay is exacerbated by a number of other considerations. First, Plaintiff concedes that, from the time he filed his complaint on June 11, 2010–nearly seven months prior to

9

the amendment deadline and 16.5 months prior to the motion–he intended to assert punitive damages. This makes his failure to adhere to the Scheduling Order deadline even more troubling.

Second, Plaintiff intimates that section 102(1.5)(a) somehow precluded him from adhering to the Scheduling Order deadline. This is not the case. Section 102(1.5)(a) states that "[a] claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." The parties exchanged initial disclosures on October 19, 2010. This was 111 days before the deadline to amend the pleadings. True, the section also requires the plaintiff to establish prima facie proof of a triable issue, but Plaintiff does not explain that this proof was procured only after the deadline passed. Instead, he essentially argues that the deadline did not even apply because asserting punitive damages was not an amendment, which I explained is incorrect.

Third, assuming, *arguendo*, that the evidence needed to make the showing above was obtained after the February 7 deadline, two problems remain. Plaintiff could have filed a motion requesting an extension prior to the deadline. Furthermore, discovery ended September 1, 2011. *See* Scheduling Order § 9(b). This motion could have been filed during discovery or immediately thereafter. It was not; it was filed approximately two months after discovery ended. I am not commenting upon whether I would have granted the motion had it been filed during or immediately after discovery. I am simply stating that filing it at that time would have behooved Plaintiff more than filing it when he did.

Plaintiff would have me disregard the Scheduling Order, the Federal Rules of Civil Procedure, and established case law to grant his motion. I decline to do so. For the reasons above,

I find that the motion is untimely.  It therefore does not meet Rule 15(a)(2).  Consequently, I need not and do not address whether compliance with Rule 16(b)(4) is also required and, if so, whether Plaintiff complies. *See Lockheed Martin Corp.*, 558 F.3d at 1166; *see also Martinez*, 384 Fed. App'x at 847 n.5.  Accordingly, I deny Plaintiff's motion with prejudice.

### III. Motion for Partial Summary Judgement

#### A. Standard of Review

"Summary judgment is appropriate 'if there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.' " *Fowler v. U.S.*, 647 F.3d 1232, 1237 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  "Summary judgment is inappropriate if a rationale factfinder could find in favor of the nonmoving party based on the evidence presented."  *Fowler*, 647 F.3d at 1237.

#### B. Discussion

In this motion, Plaintiff argues two things.  The first is that Defendant undisputably owes him an additional $12,073 pursuant to the Award. Plaintiff contends that this is because $12,073 of the Deduction was improper.  To that end, he explains that both appraisers agreed that they did not intend for the Deduction to include the following four things, the sum of which is $12,073: (1) a $6,250 subtraction for prior payment by Defendant to the Colorado Art Restoration for cleaning activities; (2) a $4,801 subtraction for additional payments by Defendant to Colorado Art Restoration; (3) a $460 subtraction for prior payment for dog kennel-related items; and (4) a $562 subtraction for prior payment for the replacement cost of a television and camera.  Put differently,

11

Plaintiff asserts that it is uncontested that both appraisers intended for Defendant to compensate Plaintiff for these four items under the Award.  And because Defendant instead subtracted them, it owes him an additional $12,073.

Plaintiff's second argument is predicated upon his first.  He argues that Colo. Rev. Stat. § 10-3-1116 applies to his claim for $12,073.  That section provides that "[a] first party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."  Colo. Rev. Stat. § 10-3-1116(1).  Plaintiff's position is that section 1116 requires me to award him $24,146 (two times his claimed covered benefit of $12,073) *in addition* to the $12,073 to which his first argument claims he is entitled to as a matter of law.

Defendant opposes both parts of the motion.  It first counters that material factual disputes exist that preclude summary judgment.  While Defendant does not dispute what the two appraisers intended with respect to the four subtractions Plaintiff enumerates, its position is that this "is not outcome determinative for purposes of summary judgment."  This is because Defendant will present facts at trial showing that Defendant actually *overpaid* Plaintiff for his personal property claim, such that it is entitled to setoff and that Plaintiff is not entitled to payments for the four items at issue here.

 I conclude that there is a disputed issue of material fact precluding summary judgment.  Defendant intends to call expert Mitchell Sweet, whose report is attached to Defendant's response.  *See* Def.'s Resp. Ex. 6 ("Sweet Report").  Sweet analyzed the insurance policy, the Award, depositions, and other relevant evidence and determined that even with the Deduction, Defendant overpaid Plaintiff for his personal property claim by $3,189.63.  Sweet Report at 15-17. (Sweet also

determines that Defendant overpaid Plaintiff for his entire insurance claim by $41,459.78. *Id.* at 20.)
In making this determination, Sweet analyzed the four items at issue. He concludes that Defendant
overpaid Plaintiff for the first two items because of a limit of liability in Plaintiff's insurance policy.
*Id.* at 15. He likewise concludes that Defendant overpaid Plaintiff for the fourth item and that
Defendant's subtraction related thereto was proper. *Id.* at 15-16. With respect to the third item,
Sweet determined that Defendant's subtraction was proper. *Id.* at 19. Sweet also found that
Defendant's conduct comported with industry standards–contrary to expected testimony by
Plaintiff's expert. *Id.* at 4-24.

Reviewing Sweet's report, as well as the rest of the evidence, and drawing the reasonable
inferences therefrom in Defendant's favor leads me to find that there is a genuine issue of material
fact as to whether Defendant owes Plaintiff the claimed $12,073. From a micro perspective, looking
only at the four items individually, Sweet's report concludes that Defendant either overpaid Plaintiff
for the item, that its inclusion in the Deduction was appropriate, or both. This alone creates a
dispute over material issues of fact. Moreover, from a macro perspective, even if Defendant indeed
owes Plaintiff $12,073 for the four items, Sweet's report raises the issue as to whether that amount
should be setoff as a result of overpaying Plaintiff for his entire claim. With this evidence, a
rationale factfinder could find that Defendant does not owe Plaintiff the claimed $12,073. Summary
judgment is therefore unwarranted. *See Fowler*, 647 F.3d at 1237.

Plaintiff marshals a host of arguments to thwart the factual dispute Defendant raises. He
begins by reiterating that the two appraisers agree that, in effect, Defendant should have paid him
$12,073 more than he did pursuant to the Award. This is not dispositive here. The fact that the two
appraisers did not intend for Defendant to subtract $12,073 from the Award does not ineluctably

establish that Plaintiff is entitled to that sum if indeed Defendant overpaid Plaintiff for those items, his property claim, and his whole insurance claim.  The Award and the appraisers' intent cannot be examined in a vacuum. They must be examined in light of all the facts and claims before me. That includes the insurance policy's terms and whether Defendant overpaid Plaintiff.  Sweet's report and expected testimony raise a genuine dispute of material fact.

Plaintiff next argues that Defendant never pleaded setoff, characterizing the issue as "non-existent" and "fictitious;" thus, Plaintiff contends, Defendant's effort to raise setoff now is prohibited.  The problem with this argument is manifest: Defendant pleaded setoff.  In both its answer and amended answer, under "Additional Defenses," Defendant asserts that it "is entitled to a setoff for all amounts paid or which will be paid regarding Defendant's processing of Plaintiff's claim." *See* Answer and Am. Answer at ¶ 40.  Defendant also included the defense of "set of for all amounts paid" in the Scheduling Order's "Statement of Claims and Defenses."  *See* Scheduling Order at §3(b). (Therein, Defendant also asserted the related defense that Plaintiff's claims are subject to the insurance policy's provisions.  Some of Sweet's conclusions also invoke this defense.)

Next, Plaintiff contends that, because of its prior actions, Defendant either waived the setoff issue or should be estopped from raising it now.  In support, Plaintiff proffers three examples of past action.  *See* Pl.'s Reply Ex. A, B, and C.  I need not decide whether the waiver or estoppel argument has merit because assuming each does, they raise factual issues that preclude summary judgment. Furthermore, Plaintiff does not explicate how waiver or estoppel as to the four specific items in question would be excepted from possible offset as a result of Defendant's alleged overpayment. For these reasons, this argument is unavailing.

Plaintiff also points me to the timing of relevant events.  He explains that Defendant filed

its answer on April 16, 2010. The answer asserted "setoff for all amounts" paid as a defense. Defendant therefore claimed setoff before the July 21 and 22 payments that included payment for the four items at issue here.  Plaintiff's position is that this chronology precludes the setoff argument.  This position is problematic.  First, in both the answer and amended answer, Defendant actually states that it "is entitled to a setoff for all amounts paid *or which will be paid* regarding Defendant's processing of Plaintiff's claim."  *See* Answer ¶ 40; *accord* Am. Answer ¶ 40.

Second, even if this prospective assertion of setoff was somehow ineffective, Defendant reasserted setoff in the amended answer, which it filed on July 23, after the July 21 and 22 payments. Third, Plaintiff does not cite any legal authority supporting his position. The July 23 amended answer also disturbs Plaintiff.  He states that

> [i]t is absolutely inconceivable and beyond belief that this insurance company could take the position that it was issuing a check to the insured on July 22, 2010 in a given amount, and then contend the very next day that the company was indeed asserting some type of set off with regard to the amount which had been paid the day before. They would have stopped payment on the check if there was a good faith belief that overpayment had occurred.

*See* Pl.'s Resp. to Notice of Supplemental Authority and Request for Fees Per F.R.C.P. 11 at 3 [Doc # 78].   This position is untenable. Plaintiff again fails to cite any legal authority.  It also assumes that Defendant knew on July 23 that it had overpaid Plaintiff for the items in question. This is an unresolved issue of fact.  Plaintiff puts Defendant in a precarious position.  On one hand he claims that Defendant could not plead setoff for antecedent payments; on the other, he states that that Defendant could not plead setoff prospectively. Yet he argues that Defendant must have pleaded setoff. As a practical matter, those rules assembled would extinguish the defense.

Plaintiff's final argument relates to Defendant's disclosures.  He states that Defendant "failed and refused to provide any disclosures of its records surrounding activities which took place in July

of 2010 which would describe or record how or why the company elected to pay the appraisal award as it did." Assuming this is true, it does not nullify that Defendant's response raises contested issues of material fact that preclude summary judgment.

I have not decided that Defendant is in fact entitled to setoff. For the foregoing reasons, I simply conclude that Defendant presents a genuine dispute over material facts with respect to whether it owes Plaintiff $12,073 for the four items discussed. Plaintiff is therefore not entitled to judgment as a matter of law. Consequently, I need not and do not consider whether section 1116 applies. Accordingly, I deny Plaintiff's motion.

### IV. Conclusion

For the reasons set forth above, IT IS ORDERED that:

1) Plaintiff's Motion to Assert Punitive Damages Pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a) **[Doc #64]** is DENIED with prejudice; and

2) Plaintiff's Motion for Partial Summary Judgement Re Failure to Satisfy Appraisal Award **[Doc #65]** is DENIED.


Date: February 17, 2012 in Denver, Colorado.


                                        BY THE COURT:


                                        s/ Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE