IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-01645-LTB-KLM

KEITH RABIN,

          Plaintiff,

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY,

          Defendant.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

        This matter is before me on four motions by Defendant Fidelity National Property and

Casualty Insurance Company ("Fidelity"): first, its Motion for Determination of Question of Law

Regarding Double Damages Under Colo. Rev. Stat. § 10-3-1116 **[Doc #94]**; second, its Motion for

Determination of Question of Law Regarding Suspension of Fidelity's Duty of Good Faith and Fair

Dealing **[Doc #95]**; third, its Motion for Partial Summary Judgement Regarding Bad Faith Claims

Based on Litigation Conduct **[Doc #96]**; and fourth, its Motion for Redesignation of Setoff Defense

as Recoupment **[Doc #97]**.  After considering the parties' arguments, and for the reasons herein, I

DENY the first motion, GRANT the second motion in part and DENY it in part, and I GRANT the

third and fourth motions.

**I. Background**

        Only a recitation of the pertinent facts is necessary. Plaintiff Keith Rabin had a homeowner's

insurance policy issued by Fidelity. On February 19, 2009, a fire occurred at Rabin's home,

damaging his real and personal property.  Rabin submitted a claim for his loss to Fidelity, and Fidelity began its claim review and adjustment process.

Between February 25, 2009, and January 19, 2010, Fidelity made various payments to Rabin totaling $34,403.89 for portions of his personal property losses. It denied other parts of his claim. Rabin expressed dissatisfaction with Fidelity's handling of his claim and the valuation process. For that reason and others, in September 2009, Fidelity requested an appraisal of Rabin's entire loss.

Disenchanted with how Fidelity handled his claim, Rabin filed suit in state court on June 11, 2010. Among other things, he alleges that Fidelity grossly mistreated him, failed to properly communicate with him, and improperly denied aspects of his claim. His suit levies three causes of action: (1) breach of contract; (2) bad faith breach of an insurance contract; and (3) a violation of Colo. Rev. Stat. § 10-3-1116.  Fidelity removed the case to this Court on diversity grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

On July 13, 2010, two appraisers issued their appraisal of Rabin's personal property loss pursuant to Fidelity's request. They concluded that the actual cash value of that loss was $52,376.74 (the "Award"). (Under the terms of the insurance policy, the "actual cash value" was the pertinent value.) Per Rabin's policy, the Award represented the entire amount of his personal property loss. As a result, before paying the Award, Fidelity deducted the $34,403.89 it had previously paid Rabin. Without waiving its right or ability to challenge the Award, Fidelity paid Rabin the remainder via two payments on July 21 and 22, 2010, respectively.

After receiving Rabin's disclosure documents, Fidelity began seeking discovery as to how the Award was calculated.  After deposing the appraisers who issued it, Fidelity's counsel believed that there was sufficient information to assert counterclaims against Rabin. On, July 12, 2011,

Fidelity filed a motion to amend the scheduling order and for leave to assert counterclaims for a declaratory judgment, breach of good faith and fair dealing, and unjust enrichment. *See* Docket #29. Magistrate Judge Mix recommended that Fidelity's motion be denied as untimely. Docket #39. I adopted that recommendation and so ordered. Docket #60.

## II. Standard of Review

Fidelity's first three motions present questions of law. *See, e.g.*, *Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo. 1995) ("Construction of a statute is a question of law . . . ."). Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the evidence in a light most favorable to the non-moving party. *See Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1286 (10th Cir. 2011). In a diversity action such as this, I apply Colorado's substantive law. *Hjelle v. Mid-State Consultants, Inc.,* 394 F.3d 873, 877 (10th Cir. 2005).

## III. Discussion

### A. The First Motion

Section 1116(1) provides that an insured "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1). Rabin's section 1116 claim seeks damages equal to two times the sum of those benefits which Fidelity allegedly (1) unreasonably delayed in paying him, but that it has paid; and (2) that it continues to unreasonably deny. Fidelity asserts that Rabin cannot receive those benefits by way of other

payments or claims *and* separately be awarded two times the amount of those benefits under his section 1116 claim. Fidelity's first motion thus poses the following issue: Under his section 1116 claim, may Rabin recover two times the amount of covered benefits which he alleges were unreasonably delayed or denied when he has received the majority of them via prior payments from Fidelity, and he seeks the remainder in another claim? I conclude that he can.

A simplified hypothetical example is helpful. Imagine that Rabin files suit claiming a total of $10,000 in covered benefits. Further imagine that Fidelity paid him $8,000 of those benefits, but that payment for the $8,000 was unreasonably delayed, and that Fidelity unreasonably denied the remaining $2,000. Rabin asserts a breach of contract claim seeking the $2,000 in benefits that Fidelity denied. He also asserts a claim under section 1116 in which he argues that he may seek $20,000–"two times the covered benefit" of $10,000–leaving him with $30,000 total if he wins both claims ($8,000 from the delayed payment; plus $2,000 from his contract claim; plus $20,000 from his section 1116 claim). Fidelity contends that Rabin may seek only $10,000 in his section 1116 claim because that would leave him $20,000 total if he wins both claims, "two times the covered benefit" ($8,000 from the delayed payment; plus $2,000 from his contract claim; plus $10,000 from his section 1116 claim). Hence, the meaning of section 1116 is what I must decide.

To resolve this issue, I look first to the plain text of section 1116(1), reject interpretations that render words or phrases superfluous, and, if possible, harmonize potentially conflicting provisions. *Hygiene Fire Prot. Dist. v. Bd. of Cnty. Comm'rs*, 205 P.3d 487, 490 (Colo. App. 2008), *aff'd*, 221 P.2d 1063 (Colo. 2009). I will give effect to the plain meaning of the statute's words and phrases, unless the result is unconstitutional. *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo. 1996). "In interpreting a statute, [my] primary goal is to effectuate the intent of the General Assembly."

*Kisselman v. American Family Mut. Ins. Co.*, - - - P.3d - - -, 2011 WL 6091708, *4 (Colo. App. 2011).  No authoritative court has addressed this issue.  (It is, however, currently awaiting review by the Colorado Court of Appeals in *Hansen, infra.*)  There are district court decisions supporting both parties' interpretations.  *Compare Vaccaro v. American Family Ins. Group*, 2010 WL 6473245 (D. Court of Jefferson Cnty., Colo., Dec. 17, 2010) (not explicitly deciding the issue but applying Rabin's interpretation), *and Hansen v. American Family*, 10-cv-6246, 3-4 (D. Court of City and Cnty. of Denver, Colo. July 6, 2011) (explicitly agreeing with Rabin), *with Stresson Corp. v. Rocky Mountain Structures, Inc.*, Case No. 09-cv-3252 (D. Court of City and Cnty. of Denver, Colo. Apr. 28, 2011) (explicitly agreeing with Fidelity); *C&M Towing & Recovery, Inc. v. Redland Ins. Co.*, 2010 WL 326335, at *1 n.1 (D. Colo. Jan. 21, 2010) (not explicitly deciding the issue but applying Fidelity's interpretation in a footnote).

Fidelity asserts that the plain language of section 1116(1) supports its position because Rabin's interpretation requires reading in the italicized verbiage: an insured "may bring an action in district court to recover *the covered benefit in addition to* . . . two times the covered benefit." Fidelity also argues that, unlike other Colorado treble-damages statutes, section 1116(1) does not include the phrase "treble-damages" or "three-times" the covered benefits.

To begin, Fidelity distorts Rabin's section 1116 claim. The claim is not seeking "three times" the covered benefits that Fidelity allegedly unreasonably delayed or denied; it seeks two times the covered benefit–exactly what the statute provides.  Nor is the claim seeking to recover the covered benefits themselves *and* two-times that amount; rather, it seeks *only* two times the amount of those benefits as a penalty for Fidelity's allegedly unreasonable delay and denial.  *See Kisselman*, 2011 WL 6091708, at *9 ("What [section 1116] does is increase the penalties on companies that

5

unreasonably delay or deny payment . . . .") (quoting Speaker Romanoff, Hearings on H.B. 1407 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assem., 2d Sess. (Apr. 24, 2008)).

It is true that under Rabin's interpretation, were he successful on his claims, his total receipt could be approximately three times the benefits at issue in his section 1116 claim, but that receipt would derive from multiple sources: one-third of it from the sum of the prior payments from Fidelity and breach of contract damages, and two-thirds from the section 1116 claim. This is different from receiving three times the covered benefit directly and entirely from the section 1116 claim. And, as explained below, section 1116 does not prohibit a plaintiff from ending up with the covered benefit itself via another source plus two times those benefits by way of a section 1116 claim. Clarifying the section 1116 claim in this way renders Fidelity's argument concerning the absence of "treble" or "triple" damages from the statute moot because Rabin is not seeking such damages in that claim.

With that elucidated, the damages Rabin seeks in the section 1116 claim are consonant with the statute. He seeks two times those covered benefits that he claims Fidelity unreasonably delayed or denied.  Hence, language need not be read in to arrive at Rabin's position.  To the contrary, Fidelity's interpretation requires me to read in language.  Fidelity argues that section 1116 effectively prohibits Rabin from recovering two times those benefits when it has already paid them. But nowhere does the section state that "two times the covered benefit" shall include or account for those benefits already paid or sought in another claim.  Nor does it state that an insured-plaintiff's total recovery is capped at two times the amount of covered benefits or that the court must subtract from the section 1116 verdict any benefits already paid or awarded elsewhere. Section 1116 prescribes what a plaintiff may recover under a claim brought thereunder, not what a plaintiff may

be left with after aggregating a section 1116 award, other claims, and prior payments. I thus read section 1116(1) as allowing Rabin to recover two times those benefits that he claims were unreasonably delayed or denied while also receiving those benefits themselves from prior payments or other claim awards.

Section 1116(4) bolsters my determination. It states that "[t]he action authorized in this section *is in addition to, and does not limit or affect*, other actions available by statute or common law, now or in the future. Damages awarded pursuant to this section shall not be recoverable in any other action or claim." Colo. Rev. Stat. § 10-3-1116(4) (emphasis added). Section 1116 thus explicitly contemplates and countenances that an insured may simultaneously bring a breach of contract claim to recover certain benefits he was denied and a section 1116 claim for double those benefits *if* they were *unreasonably* denied, a question to be resolved at trial, resulting in the insured potentially receiving three times those benefits. Allowing an insured to sue for two times those benefits that were paid but were unreasonably delayed does not seem inconsistent.

Accordingly, for the reasons above, I determine that section 1116 permits Rabin to bring a claim for two times the amount of covered benefits that Fidelity unreasonably delayed and denied, even though Fidelity has paid a portion of those benefits and Rabin is seeking the denied benefits in concurrent claims. I therefore deny this motion.

### B. The Second Motion

Rabin intends to introduce Fidelity's deduction from the Award and its refusal to pay the Award in support of his bad faith and section 1116 claims. With this motion, Fidelity argues that its good faith duty to negotiate, settle, or pay Rabin's claims was suspended by Rabin filing this

7

lawsuit and that, as a corollary, its conduct related to the Award is inadmissible to prove those claims.  I agree with Fidelity's first contention but disagree with its second.

### 1. Whether Filing this Action Suspended Fidelity's Duty to Negotiate

I begin with Fidelity's leading contention that its good faith duty to negotiate, settle, or pay Rabin's claims was suspended upon Rabin filing this suit.  It is well-settled that there is an implied covenant of good faith and fair dealing in every insurance contract.  *See Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo. App. 1998); *see also* Colo. Rev. Stat. § 10-1-101 (declaring that persons providing insurance services to the public must "be at all times actuated by good faith").  Broadly speaking, "[t]his duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer." *Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).

Importantly, however, Colorado courts have determined that the derivative duty to negotiate, settle, or pay a claim may be suspended.  The seminal case is *Bucholtz v. Safeco Ins. Co. of America*, 773 P.2d 590 (Colo. App. 1988). There, the plaintiff brought a first-party common law insurance bad faith claim and asserted that her insurer had an obligation to continue negotiations even after she had demanded arbitration. *Id.* at 592.  The plaintiff had sought arbitration pursuant to a valid arbitration clause, and the parties were disputing the amount of payment owed per the policy.  *Id.*

The court recognized that "the insurer's duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship" but added the caveat that "any obligation to negotiate as a reflection of good faith may be suspended temporarily by collateral circumstances." *Id.* at 592-93 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985) (insurer must be

accorded wide latitude in its ability to resist false or unfounded efforts to obtain funds not available under contract of insurance)). The court held that, "as a matter of law, [the insurer] had no obligation to continue to attempt a negotiated settlement while there was a genuine disagreement as to the amount of compensable damages and [the insured] had demanded arbitration." *Id.* at 593.

Recent Colorado cases dealing with first-party insurance claims have embraced *Bucholtz.* In a case involving a plaintiff's claim for common law bad faith, the court in *Sanderson,* 251 P.3d at 1217, reasserted that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, *although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith*." (citing *Bucholtz*, *supra*) (emphasis added). Similarly, in the context of claims for breach of sections 1115 and 1116, *Vaccaro v. American Family Ins. Group*, - - - P.3d - - -, 2012 WL 150068, *8 (Colo. App. 2012), affirmed that "[a]n insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy." (Citing *Bucholtz*, *supra*); *see also Delacastro v. American Family Mut. Ins. Co.*, Case No. 2010-cv-867 (Adams Cnty., Colo. Dist. Ct., June 24, 2011) (finding that the filing of an adversary proceeding suspends an insurer's common law duty to negotiate in good faith).

The parties agree that these cases stand for the proposition that an insurer's derivative duty to negotiate, settle, or pay an insured's claim is suspended when two elements are present: (1) an adversarial proceeding is filed, and (2) a genuine disagreement as to the amount of compensable damages exists. The first element materialized on June 11, 2010, when Rabin initiated this action. As to the second, the parties assent that they disagreed over the amount of damages well before

Rabin commenced this case. Their disagreement spurred Fidelity to request an appraisal in September 2009. The parties also differ over the amount and propriety of the deductions that Fidelity made to the Award. Moreover, I determined in a prior order that a genuine dispute as to issues of material fact exists regarding certain portions of the deduction and the amount Fidelity purportedly owes Rabin under the insurance contract. *See* Docket #99. These animate a genuine disagreement as to the amount of compensable damages which existed at the time Rabin filed this action. Under *Bucholtz, Sanderson*, and *Vaccaro*, then, I conclude that Fidelity's duty to negotiate, settle, or pay Rabin's claim, including the Award, was suspended when Rabin filed this lawsuit.

In opposition, Rabin cites *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545 (Colo. 1997), for the proposition that Fidelity's duty of good faith and fair dealing continues throughout litigation. The problem with Rabin's reliance on *Dale* is patent. Fidelity does not dispute that its overarching duty of good faith and fair dealing persists through the course of litigation. Instead, Fidelity homes in on a derivative duty in a specific context: whether its duty to negotiate, pay, or settle a claim is suspended by an insured filing suit. *Dale* addressed different issues. *See id.* at 547 n.1 ("We granted certiorari on the following issues:1) Whether the court of appeals erred giving issue preclusive effect to a finding from a mandatory No-Fault "arbitration," which is a special statutory proceeding designed for limited and speedy determination, which did not allow for broad judicial review. 2) Whether the court of appeals erred in holding that the issues determined in a mandatory No-Fault 'arbitration' proceeding were identical to issues that Plaintiff needed to prove in an insurance bad faith case."). Rabin's reliance on that case for this argument is thus unavailing.

I note that Colorado insurance regulations appear consonant with *Bucholtz, Sanderson*, and *Vaccaro*. Section 4(A)(1) of 3 C.C.R. 702-5:5-1-14 states the following:

> All insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

A valid and complete claim is deemed "received" by the insurer when "appraisals to determine the value of the claim have been completed." *Id.* § 4(A)(2)(a)(7). And a "reasonable dispute" may include litigation being commenced on the claim. *Id.* § 4(A)(2)(b)(6). Under these regulations, it appears that Rabin suspended Fidelity's duty to negotiate or pay his claim by filing this action.

To be clear, this does not decide that Rabin's common law bad faith and section 1116 claims fail as a matter of law. Given the similarities between the issues, in some cases, deciding that an insurer's duty to negotiate was suspended may resolve an insured's bad faith or section 1116 claim. *Compare Vaccaro*, 2012 WL 150068, at *8 ("An insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy."), *with Sanderson*, 251 P.3d at 1217 ("When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim."), *and* Colo. Rev. Stat. § 10-3-1116(1). But that is not the case here because Rabin's bad faith and section 1116 claims do not appear to be based strictly upon the deduction from the Award or conduct occurring after this suit was filed. *See* Part III.B.2., *infra*. Rather, they are based upon Fidelity's entire course of conduct beginning in February 2009. Rabin could thus prevail on his bad faith and section 1116 claims even though filing suit suspended Fidelity's duty to negotiate.

11

Accordingly, I conclude that Fidelity's good faith duty to negotiate, pay, or settle Rabin's claims was suspended by Rabin filing suit. I therefore grant this portion of Fidelity's second motion.

### 2. Admissibility of Fidelity's Conduct Related to the Award

Fidelity secondly argues that because its duty to negotiate was suspended, all evidence of its conduct occurring after Rabin filed suit is inadmissible to support his bad faith and section 1116 claims. It asserts that, "[s]pecifically, this means that [Rabin] cannot argue that the deductions Rabin made from the Award are evidence of bad faith because the Award was issued by the appraisers on July 13, 2010, over a month *after* [Rabin] filed this lawsuit." Because Fidelity narrows the scope of its argument in this way, I correspondingly circumscribe my analysis to whether the deduction or Fidelity's refusal to pay the Award is admissible for purposes of proving Rabin's bad faith or section 1116 claims. I conclude that the conduct is admissible in the way delineated below.

To begin, Fidelity proffers no legal authority in support of its position. Instead it conclusorily asserts that because its duty to negotiate was suspended when litigation was filed, evidence of its conduct thereafter is inadmissible. This is insufficient. Additionally, Colorado case law also weighs against this conclusion.

In *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102 (Colo. App. 1990), an insured filed suit alleging that the insurer had breached its duty of good faith in handling a worker's compensation claim. Thereafter, the insurer made late payments of worker's compensation benefits and refused to cooperate with an employee's rehabilitation efforts. *Id.* at 1104. The trial court admitted evidence of that conduct. On appeal, the insurer argued that the evidence was inadmissible because its conduct had occurred after the lawsuit was filed. The court of appeals held that the evidence was admissible as proof of the insurer's bad faith. *Id.* at 1106. It reasoned that "[t]he admission of this evidence did

12

not state a new cause of action, change the theory of the action, or cure a defective pleading." *Id.* Instead, "the continued late payments and ongoing difficulties in securing rehabilitation were merely a continuation of the same difficulties that preceded the filing of the complaint and were relevant as evidence of defendant's habitual pattern in dealing with plaintiff." *Id.*

Although it was not addressing the admissibility of an insurer's conduct during litigation as evidence of its bad faith or section 1116 violation, in *Dale, supra,* the Colorado Supreme Court approved *Southerland*. Recall that *Dale* involved an insured who sued her insurer for, *inter alia*, bad faith breach of an insurance contract based on conduct before and after litigation, the latter of which was that the insurer delayed payment after an arbitration award. Quoting *Southerland*, the court stated that "evidence of bad faith must be examined in its entirety" and that "claims of insurance bad faith may encompass all of the dealings between the parties, including conduct occurring after the arbitration procedure." *Dale*, 948 P.2d at 553, 552.  Furthermore, and more specifically, "plainly, *evidence of a consistent pattern* of delaying payments due, including arbitration awards, is relevant for an insurance bad faith claim and would tend to prove bad faith on the part of the insurance company." *Id.* at 553 n.10. (emphasis added).

I conclude that with respect to the issue of whether evidence of the deduction and Fidelity's refusal to pay the entire Award is admissible to show bad faith and a section 1116 violation, *Southerland* and *Dale* are sufficiently akin to this case.  From the complaint, Rabin's bad faith and section 1116 claims, like those in *Southerland* and *Dale*, appear to be based on the *totality* of Fidelity's conduct, its alleged consistent pattern of maltreatment–not just its conduct related to the Award.  *See* Am. Compl. This is permitted.  *See, e.g., Vaccaro*, 2012 WL 150068, at *4  ("[B]ad faith may encompass an entire course of conduct and can be cumulative.").  Moreover, admitting

13

evidence of the conduct at issue does not state a new cause of action, change the theories of the claims, or cure a defective pleading.  The conduct is instead "merely a continuation of the same difficulties that preceded the filing of the complaint." *Southerland*, 794 P.2d at 1106.  That conduct is therefore relevant as evidence of Fidelity's "habitual pattern of dealing with" Rabin.  *Id.*

Accordingly, I conclude that Rabin may introduce evidence of the deduction and Fidelity's refusal to pay the full Award in an attempt to demonstrate a pattern or course of conduct by Fidelity constituting bad faith or a section 1116 violation (subject, of course, to the other Federal Rules of Evidence). I therefore deny this portion of the Fidelity's second motion.

Importantly, I do not decide whether the conduct would be admissible if it was the sole basis for a bad faith or section 1116 claim given that Fidelity's duty to negotiate was suspended at that time because it does not appear that is the nature of Rabin's claims. If through the course of litigation it appears that the conduct is not additional evidence of those claims, but *the* basis for one or both of them, I am amenable to addressing that question upon a motion by one of the parties before or during trial.

### C. The Third Motion

Rabin seeks to introduce Fidelity's attempt to assert counterclaims in support of his bad faith and section 1116 claims. With this motion, Fidelity requests an order that he cannot and, to the extent the bad faith and section 1116 claims are based on that conduct, that those claims should be dismissed as a matter of law.  I agree.

As explained in Part III.B, *supra*, generally, "bad faith may encompass an entire course of conduct and can be cumulative." *Vaccaro*, 2012 WL 150068, *4. As such, evidence of bad faith conduct which occurred after the filing of the complaint may be admissible as evincing "a

continuation of the same difficulties that preceded the filing of the complaint" and as relevant as evidence of a habitual pattern of a defendant's dealing with the plaintiff in bad faith. *See Southerland*, 794 P.2d at 1106; *see also Dale*, 948 P.2d at 552-53.

Attorney conduct during litigation, however, is subject to a different rule. *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809 (Colo. App. 2006), was the first Colorado case to consider whether evidence of an insurer's attorney's conduct during litigation is admissible as part of an insured's bad faith claim. The insurer's counsel had filed an answer denying all responsibility and consisting of groundless denials and defenses, refused to allow discovery to proceed until a case management order was entered, declined to sign a case management order, asked the court to vacate the default judgment hearing, would not make himself available for this hearing, forced an unnecessary jury trial to be held, and refused to be deposed. *Id.* at 818.

The court reasoned that because the focus of a bad faith claim is on the decision to refuse or to delay making payments owed under an insurance policy, "the relevance of litigation conduct by an attorney after the refusal or delay has occurred may be limited." *Id.* at 817. Furthermore, "[p]ermitting evidence of attorney behavior to form the basis for a bad faith claim against an insurer could create potential conflicts with the attorney's litigation privilege, which bars defamation actions based on statements made about the subject matter of proposed or pending litigation." *Id.* It could also deter zealous advocacy, as "insurers would be deterred from conducting a vigorous defense if their pleadings could be used as evidence of pre-existing bad faith." *Id.* at 819. The court had misgivings about the ethical dilemmas for attorney's representing insurance companies resulting from a general rule allowing such evidence as proof of bad faith: "Arguably, they would be forced to withdraw from representing their clients if they were likely to become necessary witnesses. Using

attorney litigation conduct as a basis for proving an insurer's bad faith also could involve attempts to obtain or introduce information protected by the attorney-client and work-product privileges." *Id.* at 817.  Lastly, it found that there are other means to regulate the conduct of attorneys.  *Id.*

This reasoning led the *Parsons* court to hold that an attorney's conduct during litigation as evidence of insurance bad faith "may be admitted if the risks of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or the presentation of unnecessary cumulative evidence are substantially outweighed by the probative value of the evidence."  *Id.* at 818. Using this test, the court concluded that the trial court did not err in denying the insured's request to introduce such evidence and in dismissing their bad faith claim with respect to such conduct. *Id.*

Before applying *Parsons*'s balancing test, I address Rabin's preliminary argument that this motion seeks improper relief.  He explains that this motion seeks to exclude as evidence just *one* piece of conduct occurring after litigation commenced–the attempted counterclaims–yet Fidelity asserts that excluding that evidence entitles it to partial summary judgment on both the bad faith and section 1116 claims to the extent they are based on *any* conduct occurring during litigation.

Rabin's opposition is understandable, as Fidelity is inconsistent with regards to its requested relief.  *Compare, e.g.*, Def.'s Third Mot. at 1 (". . . hereby requests the Court to enter partial summary judgment in its favor on Plaintiff's common law and statutory bad faith claims to the extent that are based on Fidelity's litigation conduct . . . ."), *with id.* at 7 (". . . the Court should enter summary judgment in Fidelity's favor on Plaintiff's common law and statutory bad faith claims to the extent they rely on the post-filing litigation conduct of Fidelity's counsel . . . ."). Fidelity

discusses only the attempted counterclaims in this motion.  Then, in its reply, it seeks to expand the motion to include several other instances of conduct occurring during litigation.

The substance of the Fidelity's third motion is whether evidence of the attempted counterclaims is admissible in support of Rabin's bad faith and section 1116 claims and, if not, whether Fidelity is entitled to partial summary judgment on those claims to the extent that they are based on that conduct.  These are also the only issues that are fully briefed. I therefore limit my analysis to this inquiry, rendering Rabin's preliminary argument moot.

I now turn to *Parsons*'s impact here.  The attempted counterclaims lack the necessary probative value as to bad faith or a section 1116 violation. In *Parsons*, *supra*, and *Timberlake Const. Co. v. U.S. Fidelity and Guaranty*, 71 F.3d 335 (10th Cir. 1995), the insured tried to introduce conduct occurring during litigation as evidence of the insurer's bad faith. The conduct in *Parsons* was presented above.  *See* 165 P.3d at 818.  In *Timberlake*, the conduct was a letter from the insurer's counsel to one of its claims adjusters in which counsel stated that "[i]t looks like we have [the insured] squirming pretty good"; that the insurer filed a counterclaim against the insured seeking to recover the monies paid pursuant to the non-waiver agreement; and that the insurer moved to join a third-party in the suit as a necessary party.  71 F.3d at 339, n.5. In both cases, the court refused to admit the conduct, finding it lacking necessary probative value.  *Parsons*, *supra*; *Timberlake, supra*; *c.f., Sanderson*, 251 P.3d at 1217 (recognizing that "resort to a judicial forum does not necessarily evince bad faith or unfair dealing, regardless of the outcome of the proceeding"). Based on what is before me, the attempt to assert counterclaims is more benign and less probative of bad faith and a section 1116 violation than the conduct in *Parsons* and *Timberlake*.

In an effort to show probity, Rabin points to other conduct by Fidelity and its counsel as well as the timing of its attempt to assert counterclaims, but I am not persuaded. Regarding the other conduct, this motion focuses on the attempted counterclaims; I do not decide the admissibility or propriety of the other conduct Rabin cites.  Moreover, assuming, *arguendo*, that other conduct during litigation shows bad faith, it does not follow that every act by Fidelity or its counsel during that time was in bad faith. Stated differently, one act of bad faith does not infect all acts.  This is especially true given that the Award is what precipitated the counterclaims, and I have previously found that genuine issues of material fact exist as to the Award and what amount Fidelity owes Rabin with respect to his entire claim. Nor does the timing of the counterclaims convince me of their probity; the basis for the counterclaims was discovered during the course of litigation.

Examining the other end of the *Parsons*'s balancing test, like the courts in *Parsons* and *Timberlake*, I am concerned about the risks of confusing and misleading the jury and unfairly prejudicing Fidelity.  To establish bad faith, Rabin must show that Fidelity acted unreasonably and with knowledge or reckless disregard of its unreasonableness.  *See Dale*, 948 P.2d at 545.  Allowing Rabin to introduce the counterclaims as evidence of bad faith runs counter to my prior order discussing the Award by suggesting those claims were unreasonable. *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103, 1109 (10th Cir. 2010) (looking at whether insured's claim was "fairly debatable" to decide whether insurer's decision to file a declaratory judgment was unreasonable). This case is about Rabin's three claims against Fidelity–not precluded counterclaims. Whether the counterclaims demonstrate bad faith or a section 1116 violation would require delving into their respective merits, as a meritorious counterclaim would not be in bad faith. Among other quagmires, this would likely require Fidelity's counsel to testify and the Court to tread into attorney-

client and work-product privileges. To mitigate the confusion this would wrought, the jury would need to be informed of the case's procedural machinations as well as why the counterclaims were denied, both of which would compound the confusion and obfuscation.  The paucity of probative value also makes me concerned about unfairly prejudicing Fidelity with evidence that may have been the product of vigorous and zealous legal advocacy.

Rabin's final argument opposing the motion is that *Parsons* does not apply because its rule is limited to attorney conduct, and the attempt to assert the counterclaims was Fidelity's conduct. I disagree. In *Parsons*, filing denials and defenses was "attorney litigation conduct."  165 P.3d at 819.  At its furthest degree of consanguinity, filing a counterclaim is a sibling to asserting denials and defenses. I therefore conclude *Parsons* governs.  Additionally, in *Timberlake*, upon which *Parsons* heavily relied and cited, the Tenth Circuit used essentially the exact same test later announced in *Parson*s to hold that evidence of an insurer's counterclaim was inadmissible to show an insurer's bad faith. 71 F.3d at 339-42.  Rabin's contention is thus untenable.

In short, based upon what is before me, the attempt to file the counterclaims does not amount to the "extraordinary facts" or the "rare instance" that would justify allowing Rabin to introduce them as evidence of bad faith or a section 1116 violation.  *See Tait v. Hartford Underwriters Ins. Co.*, 49 P.3d 337 (Colo. App. 2001) (affirming an increase award of exemplary damages in a bad faith breach of insurance contract action based upon the insurer's complaints about an expedited trial date, discovery violations that required hearings to insure compliance, and delegating to counsel its continuing obligations to the insured); *see also Timberlake*, *supra.*  I therefore conclude that evidence of them is inadmissible for purposes of proving Rabin's bad faith or section 1116 claims and accordingly grant that portion of the motion.  Consequently, I also grant the portion of the

motion seeking summary judgment on Rabin's bad faith and section 1116 claims to the extent they are based upon that conduct. *See, e.g.*, *Parsons*, *supra* (where court of appeals affirmed the district court granting judgment on the pleadings in favor of the insurer on a bad faith claim against it because evidence of its attorney's conduct during litigation was inadmissible to prove that claim).

This ruling is not inconsistent with my ruling in Part III.B.2, *supra*. While both orders assess the admissibility of conduct that occurred after a lawsuit was filed in support of bad faith and section 1116 claims, the conduct at issue in the respective rulings is different. This difference is what accounts for the disparate but harmonious rulings.

### D. The Fourth Motion

In this its fourth and final motion, Fidelity seeks an order redesignating its defense of setoff as a defense of recoupment to avoid any confusion. Fidelity's setoff defense was discussed in my prior order. *See* Docket # 99. To summarize, Fidelity asserted setoff claiming that it overpaid Rabin for certain portions of the insurance claim at issue here such than any award to Rabin in this litigation should be reduced by the amount of that overpayment. *Id.* I determined that Fidelity had asserted setoff in its answer, amended answer, and in the Scheduling Order, and that it had demonstrated a genuine factual dispute with respect to that issue. *Id.* at 14. Fidelity now seeks to redesignate its setoff defense as recoupment. For the reasons below, I grant this motion.

Recoupment and setoff, while distinct, are closely related and easily confused. Recoupment is "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising from the very matter giving rise to the plaintiff's claim." *U.S. v. 2,116 Boxes of Boned Beef, Weighing Approximately 154,121 Pounds*, 726 F.2d 1481, 1490 (10th Cir. 1984); *Reiter v. Cooper*, 507 U.S. 258, 264 (1993) (defining recoupment as

20

"the setting off against asserted liability of a counterclaim arising out of the same transaction"). "In the absence of a statute providing otherwise, recoupment is purely defensive and not offensive, at least when employed in a court of law." *MidAmerican Communications Corp. v. U.S. West Communications, Inc.*, 857 F.Supp. 772, 773 (D. Colo. 1994); *Citizens Bank Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n*, 888 F.2d 1303, 1304 (10th Cir. 1989), *rev'd on other grounds*, 498 U.S. 505 (1991) (recoupment is an equitable defense that applies only to suits for money damages and only to the abatement, reduction, or mitigation of the damages claimed by plaintiff).

By contrast, "[t]he right of setoff allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *In re Myers*, 362 F.3d 667, 672 (10th Cir. 2004) (internal quotations omitted). Setoff "does not operate as a denial of the plaintiff's claim but allows the defendant to set off the debt that the plaintiff owes the defendant against the plaintiff's claim against the defendant." 20 Am. Jur. 2d *Counterclaim, Recoupment, and Setoff*, § 6 (2012). The distinction between setoff and recoupment, then, is that setoff has "the nature and effect of an independent action by the defendant against the plaintiff"–that is, "[g]enerally, a setoff must rest on a claim enforceable in its own right." *Id.* § 7. "As such, it must be asserted as a counterclaim rather than a defense." *Id.* § 6.

A party who confuses these when pleading is not bound to his mislabeling. Rule 8(c)(2) of the Fed. R. Civ. P. provides that "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Indeed, because of Rule 8(c)(2), "it makes no difference that petitioners may have mistakenly designated their counterclaims as defenses." *Reiter*, 507 U.S. at 263; *accord* 5 C. Wright & A. Miller, Federal Practice and Procedure

21

§ 1275, pp. 459-60 (2d ed. 1990) ("Inasmuch as it is not clear whether set-offs and recoupments should be viewed as defenses or counterclaims, the court, by invoking the misdesignation provision in Rule 8(c), should treat matter of this type as if it had been properly designated by defendant, and should not penalize improper labelling"). Moreover, the "[m]odern rules of pleading have diminished the importance of the common-law distinctions surrounding recoupment and its companion, setoff." *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986).

I conclude that Fidelity may redesignate the defense. The substance for the defense–the alleged overpayment of certain portions of Rabin's claim–rings more of recoupment than setoff. It "aris[es] from the very matter giving rise to the plaintiff's claim." *2,116 Boxes of Boned Beef*, 726 F.2d at 1490. The alleged overpayments were made to satisfy the exact claim for insurance benefits for which Rabin is suing in this action. And "[t]he substance rather than the name or denomination given to a pleading is the yardstick for determining its character and sufficiency." *Rubenstein v. U.S.*, 227 F.2d 638, 642 (10th Cir. 1955); *see also Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1302 (Colo. App. 1998) (noting to look at the essence of a claim regardless of how it is denominated). It is difficult to imagine that Fidelity could bring this claimed overpayment as a separate claim, a consideration which also weighs in favor of recoupment.

Furthermore, I see no harm to Rabin in allowing the redesignation. Setoff has been asserted since the outset. The defense's factual underpinnings remain the same. So does its essential dispute: did Fidelity overpay Rabin for certain parts of his insurance claim? Fidelity's ultimate goal of reducing Rabin's award is also unchanged.

Rabin does not argue that harm or injustice would result from granting the motion. In fact, he does not contest redesignation. He instead attacks the merits of overpayment as a defense and

argues that it is not a defense at all, regardless of its denomination.  He then asks me to strike the defense. My prior order established that a genuine issue of material fact exists regarding the overpayment. Additionally, a response is not the proper vehicle with which to make such a request. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

Accordingly, I grant this motion and redesignate Fidelity's defense of setoff as recoupment.

### IV. Conclusion

For the reasons set forth above, IT IS ORDERED that

1) Fidelity's Motion for Determination of Question of Law Regarding Double Damages Under Colo. Rev. Stat. § 10-3-1116 **[Doc #94]** is DENIED;

2) Fidelity's Motion for Determination of Question of Law Regarding Suspension of Fidelity's Duty of Good Faith and Fair Dealing **[Doc #95]** is GRANTED insofar as it seeks a determination that its good faith duty to negotiate, pay, or settle the Rabin's claims was suspended by Rabin filing suit, but it is DENIED insofar as it seeks to preclude evidence of the deduction and Fidelity's related conduct as proof of Fidelity's bad faith or section 1116 violation;

3) Fidelity's Motion for Partial Summary Judgement Regarding Bad Faith Claims Based on Litigation Conduct **[Doc #96]** is GRANTED; and

4) Fidelity's Motion for Redesignation of Setoff Defense as Recoupment **[Doc #97]** is

GRANTED.


Date: May 23, 2012, in Denver, Colorado.

BY THE COURT:


s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE